) ˙ ˙ 26 ˙ 07 Shown

FILED

SEP 2 6 2007

*[signature]*
CLERK OF THE CIRCUIT COURT
MONROE COUNTY, ILLINOIS

IN THE CIRCUIT COURT
TWENTIETH JUDICIAL CIRCUIT
MONROE COUNTY, ILLINOIS

QUINTEN E. SPIVEY, individually and on
behalf of others similarly situated,

       Plaintiff,

    v.

VERTRUE, INC.,

*Serve at:*
    *William A. Durkin III, Registered Agent*
    *One Atlantic Street*
    *Stamford, CT 06901*

       Defendant.

No. _07 - L - 31_

## CLASS ACTION COMPLAINT

Plaintiff Quinten E. Spivey, on behalf of himself and all others similarly situated, for his Class Action Complaint against Vertrue, Inc. ("Vertrue"), alleges as follows:

### NATURE OF THE ACTION

1.     Vertrue, independently and in conjunction with its wholly owned subsidiaries, is one of the largest and most sophisticated cramming operations in the United States. "Cramming" is the practice of imposing unauthorized charges on consumer credit card and other billing statements. Vertrue uses coercive and deceptive practices to generate new business, including but not limited to: misusing consumer billing data obtained through strategic alliances with other business organizations; disguising "membership materials" as junk mail to prevent consumers from discovering that they have "agreed" to purchase a discount club membership; and the use of deceptive tactics to prevent consumers from cancelling their memberships.

EXHIBIT A

2.     Plaintiff, on behalf of himself and all others similarly situated, asserts claims under the Illinois Consumer Fraud Act ("ICFA"), 815 ILCS 505/1, *et seq.*, the Illinois Credit Card and Debit Card Act, 720 ILCS 250/1, *et seq.*, and for unjust enrichment and conversion.

## PARTIES, JURISDICTION AND VENUE

3.     Plaintiff, Quinten Spivey, is a resident of Columbia (Monroe County), Illinois.

4.     Defendant, Vertrue, Inc., is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 20 Glover Avenue, Norwalk, Connecticut 06850.

5.     Vertrue subsidiary Adaptive Marketing LLC ("Adaptive") likewise has a principal place of business at 20 Glover Avenue, Norwalk, Connecticut 06850. It purports to be a limited liability company, though a search of online Connecticut Secretary of State records revealed no such entity.

6.     Vertrue's 2006 Annual Report identified the following subsidiaries of Vertrue: Adaptive Marketing LLC; Coverdell & Company Inc.; MemberWorks Canada Corporation; Lavalife Inc.; Bargain Network Inc.; and MyChoice Medical Holdings, Inc. (collectively the "Subsidiaries"). Upon information and belief, the Subsidiaries are wholly owned subsidiaries of Vertrue, and the relationship between Vertrue and the Subsidiaries, their common management and interests, the daily operational control exercised by Vertrue over the Subsidiaries, and Vertrue's direct participation in the Subsidiaries' business are such that the Subsidiaries are the alter egos of Vertrue and that

- 2 -

Vertrue is liable for the acts and omissions of Adaptive and the other Subsidiaries as alleged herein.

7.      Vertrue is not authorized by the Illinois Secretary of State to transact business in the State of Illinois, it is not an Illinois business entity, and thus it is not a resident of this State.

8.      This Court's exercise of personal jurisdiction over Vertrue is proper pursuant to 735 ILCS §§ 5/2-209(a) and (c) because this cause of action arises from Vertrue's transaction of business in this State and the commission of tortious acts in this State, and for any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States.

9.      Venue is proper in this Circuit pursuant to 735 ILCS 5/2-101 in that Vertrue is a nonresident of this State and the transaction (or some part thereof) out of which the cause of action arose occurred in this County.

### GENERAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

10.     Vertrue describes itself as an "integrated marketing services company." Previously known as "MemberWorks, Inc.," the company changed its name to "Vertrue" in 2004 as part of a "re-branding" effort. The re-branding effort occurred after several state attorneys general instituted consumer protection lawsuits against the company.

11.     Ostensibly, Vertrue and the Subsidiaries market and sell membership programs that purport to provide savings on various consumer goods and services. For these memberships, Vertrue charges monthly fees that range from approximately $9.95 to $19.95 or annual fees that range from approximately $169.95 to $199.95.

12.    However, there is little or no actual consumer demand for Vertrue's membership programs, and Vertrue's continued success as a business enterprise depends on its ability to cram consumers with membership charges.

13.    In many instances Vertrue crams consumers with membership charges by simply imposing its membership fees directly against consumers' credit cards, debit cards, and bank accounts without the consumers' knowledge or authorization.

14.    Vertrue also has employed a practice of making it virtually impossible for consumers to cancel their memberships and thereby discontinue repeated unauthorized charges to their accounts.

15.    Vertrue markets at least 22 membership programs having names such as HomeWorks Plus, 24 Assistance, 24 Protect Plus, At Home Rewards, BusinessMax, Card Protect Plus, Connections, Essentials, Galleria USA, Lifestyle Rewards, Main Street Savings, Passport To Fun, Premier Health Plus, Privacy Matters, Privacy Plus, Shopping Essentials, Simple Escapes, Simply You, Today's Escapes, Travel Source, ValueMax, and Your Savings Club.

16.    Vertrue's business practices systematically generate numerous complaints from individuals who state, among other things, that:

> A.    They have never heard of Vertrue (or Adaptive or another Vertrue Subsidiary) or any of their membership products and do not understand how they came to be charged for a membership they never heard of;
>
> B.    They never authorized Vertrue to access their account numbers or other confidential billing information and do not know how Vertrue came into possession of the information;
>
> C.    They have not consented to be enrolled in one of Vertrue's memberships and have not authorized the charges to their accounts;

- 4 -

D.   They do not know what the membership program is or what it purports to offer;

E.   They are billed for Vertrue's membership programs whether or not they notify Vertrue of their desire to cancel their membership prior to expiration of the free trial period;

F.   Their attempts to stop Vertrue's periodic billings were obstructed or disregarded by Vertrue's employees or representatives;

G.   Their requests for refunds of the money taken by Vertrue were obstructed or disregarded by Vertrue's employees or representatives; and

H.   They often are forced to close their credit card and bank accounts and open new accounts in order to protect their accounts from Vertrue's unauthorized billing.

17.   Vertrue has been sued by the Attorneys General of California, Florida, Iowa, Minnesota, Nebraska, New York, and Ohio in connection with allegations that it charges consumers for membership programs without consumers' authorization and engages in deceptive and misleading marketing practices.  As part of its investigation into a lawsuit against Vertrue in May of 2006, the Iowa Attorney General sent questionnaires to 400 Iowa residents enrolled in Vertrue membership programs.  Of the questionnaire respondents, 67% indicated that they did not know they were members and/or that they did not authorize Vertrue to charge them.  The Iowa Attorney General reports that, "Most of the rest of the consumers who responded indicated that they had never used their membership, or thought that they had already cancelled.  None of those responding said that they were satisfied members."

18.   The Better Business Bureau gives Vertrue an "unsatisfactory record" due to "a pattern of complaints concerning unauthorized charges to consumers' credit cards." Complaints reported to the Better Business Bureau:

- 5 -

primarily involve claims of unauthorized charges by the Company's affiliates. In such cases, customers reported no recollection of having agreed to the programs that were billed to their credit card, debit card or bank account. In some of the cases, consumers reported being charged for two or three years.

*See* Ex. 1.

19.    Vertrue is aware of the widespread consumer complaints against it but makes no effort to remedy or suspend the practices which give rise to the complaints. Instead, Vertrue continues to perfect and deploy the techniques that give rise to the complaints.

20.    Vertrue occasionally refunds membership fee payments to consumers in an effort to forestall legal or regulatory action. Typically, Vertrue will offer a partial refund after a protracted and often harrowing sequence of attempts by the consumer to reach company representatives and secure a refund.

21.    According to its website, www.homeworksplus-program.com, HomeWorks Plus is a 'membership program' that is offered "from" Vertrue subsidiary Adaptive Marketing LLC.

### PLAINTIFF SPIVEY'S EXPERIENCES

22.    Proposed Class Representative Quinten Spivey is the holder of a credit card issued through Bank of America.

23.    On his January, 2007 credit card billing statement from Bank of America, Mr. Spivey noticed a charge in the amount of $199.95, for an ostensible purchase from "AP9 HomeWorks Plus" in the State of Connecticut. The "transaction date" of this charge was December 27, 2006.

24.    Mr. Spivey was not familiar with HomeWorks Plus, did not recall making any purchase from any company in Connecticut, and did not authorize any charge by

- 6 -

HomeWorks Plus to his credit card, either in the amount of $199.95 or in any other amount.

25.     Upon seeing the December 27, 2006 HomeWorks Plus charge, Mr. Spivey also decided to review his earlier credit card statements and determined that a similar charge for $199.95 to AP9 HomeWorks Plus had been charged on December 24, 2005 to the same credit card (issued at that time through MBNA America, the predecessor to Bank of America).

26.     Because Mr. Spivey's wife is a schoolteacher, and because of the similarity between the words "HomeWorks Plus" and "homework," Mr. Spivey suspected that the HomeWorks Plus entries on his credit card statements might have referred to school-related purchases that his wife authorized. Mrs. Spivey confirmed, however, that she authorized no such charges from any such company and, as Mr. Spivey later learned, HomeWorks Plus is not affiliated with the education business.

27.     Mr. Spivey placed a telephone call to the 1-888 number listed next to the AP9 HomeWorks Plus entry on his January, 2007 credit card statement and was connected to one of Adaptive's and/or Vertrue's customer service agents. He explained that he had never heard of HomeWorks Plus and had not authorized the HomeWorks Plus charges to his credit cards.

28.     The agent did not deny that the charges had been made without authorization, nor did the representative make any effort to provide evidence of actual authorization.

29.     Instead, the agent agreed to refund a mere $179.70 of the $399.90 that Vertrue/Adaptive had fraudulently and without authorization charged to Mr. Spivey's

credit cards. Vertrue and Adaptive have refused to refund the remaining $220.20 portion of the fraudulent charges.

30. In making the unauthorized charges to Mr. Spivey's account, Vertrue/Adaptive misrepresented to the card issuer that Mr. Spivey had authorized the charges, and/or concealed from the card issuer the material fact that Mr. Spivey had not authorized the charges.

31. Vertrue/Adaptive fraudulently concealed from Mr. Spivey the material fact that they had charged Mr. Spivey's credit card by failing to inform him of the charges, or by sending notice of the charges in the form of a 'membership package' that was designed to look like junk mail so that it would be discarded.

### CLASS ACTION ALLEGATIONS

32. Pursuant to 735 ILCS 5/2-801, *et seq.*, Plaintiff brings this Class Action on behalf of the following:

> All Illinois residents whose credit cards, debit cards, or bank accounts were billed for one or more of Vertrue's memberships during the period from September 25, 2002 to the present without either written authorization or recorded verbal authorization.

Excluded from the Class are (1) members of the Illinois state judiciary, and (2) Vertrue and any entity in which Vertrue has a controlling interest, including officers, directors, and members of their immediate families.

33. The members of the Class, being geographically dispersed and numbering at least 50, are so numerous that joinder of them in a single action is impracticable.

34. Plaintiff can and will fairly and adequately represent and protect the interests of the Class, as (a) the claims of Plaintiff are substantially similar (if not identical) to those of absent Class members, (b) there are questions of law or fact that are

- 8 -

common to the Class and that predominate over any individual issues, (c) without the

Class representation provided by Plaintiff, virtually no Class members will receive legal

representation or redress for their injuries, (d) Plaintiff and Class counsel have the

necessary financial resources to adequately and vigorously litigate this class action, and

(e) Class counsel are experienced in class litigation and have the resources to vigorously

pursue this matter.

35.   There are questions of law and fact that are common to all Class members,

including *inter alia*:

(a)   Whether Vertrue was entitled to bill the credit cards or bank accounts of the proposed Class Members without their authorization;

(b)   Whether Vertrue's unauthorized billing of the credit cards or bank accounts of the proposed Class Members was unfair or deceptive in violation of the Illinois Consumer Fraud Act;

(c)   Whether Vertrue's conduct alleged herein violated the Illinois Credit Card and Debit Card Act;

(d)   Whether Vertrue was unjustly enriched;

(e)   Whether Vertrue has improperly converted the property of the proposed Class;

(f)   Whether the Class members have sustained damages and, if so, the proper measure of their damages.

36.   The common questions of law and/or fact predominate over any questions

affecting only individual Class members.

37.   A class action is an appropriate method for the fair and efficient

adjudication of this controversy, given that: (a) Common questions of law and fact

overwhelmingly predominate over any individual questions that may arise, such that

- 9 -

there would be enormous economies to the Court and the parties in litigating the common issues on a classwide instead of a repetitive individual basis; (b) the size of each Class member's relatively small claim is too insignificant to make individual litigation an economically viable alternative, such that as a practical matter there is no "alternative" means of adjudication to a class action; (c) few Class members have any interest in individually controlling the prosecution of separate actions (any that do may opt out); (d) Class treatment is required for optimal deterrence and compensation and for limiting the court-awarded reasonable legal expenses incurred by Class members; (e) despite the relatively small size of individual Class members' claims, their aggregate volume, coupled with the economies of scale inherent in litigating similar claims on a common basis, will enable this class action to be litigated on a cost-effective basis, especially when compared with repetitive individual litigations; and (f) no unusual difficulties are likely to be encountered in the management of this class action insofar as Vertrue's liability turns on substantial questions of law or fact that are common to the Class and that predominate over any individual questions.

<u>COUNT I</u>
(ILLINOIS CONSUMER FRAUD ACT)

38.     Plaintiff incorporates by reference the allegations in all preceding paragraphs as if fully set forth herein.

39.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") prohibits unfair and deceptive acts or practices.  815 ILCS 505/1, *et seq.*

40.     Vertrue's acts and practices as alleged herein are deceptive in that Vertrue, directly and/or through its controlled Subsidiaries:

A.   Fraudulently misrepresented to the credit card and debit card companies of Plaintiff and the proposed Class that Vertrue had authorization to charge their credit cards or debit cards when, in fact, Vertrue had no such authorization;

B.   Fraudulently concealed from the credit or debit card companies the material fact that Plaintiff and the Class had not authorized Vertrue to charge their debit cards or credit cards; and/or

C.   Fraudulently concealed or omitted from disclosure to Plaintiff and the Class the material fact that Vertrue had charged their credit or debit cards; and/or

41.   Vertrue intended that Plaintiff and the Class and their credit card or debit card companies would rely on such misrepresentations, concealments, or omissions, thereby influencing their actions.

42.   Vertrue's acts and practices as alleged herein are unfair in that they:

A.   Offend public policy by, for example, violating the criminal and civil provisions of the Illinois Credit and Debit Card Act, 720 ILCS 250/1, *et. seq.* (*see*, *e.g.*, 720 ILCS §§ 250/12, 250/17.02, and 250/17.03);

B.   Are immoral unethical, oppressive and unscrupulous; and

C.   Cause substantial injury to consumers.

43.   Plaintiff and the proposed Class have suffered actual damage as a result of Vertrue's unfair and deceptive conduct.

44.   Vertrue's unfair and deceptive acts or practices as alleged herein occurred in the conduct of trade or commerce within the meaning of ICFA.

45.   Plaintiff and the proposed Class are consumers within the meaning of ICFA.

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, requests the following relief on Count I as follows:

a)  An order certifying the proposed Class pursuant to 735 ILCS 5/2-801, *et seq.*, and appointing Plaintiff and his counsel of record to represent the proposed Class;

b)  Judgment in favor of Plaintiff and the proposed Class and against Vertrue in the amount of the actual damages of Plaintiff and the proposed Class, including consequential damages such as late fees and assessed interest, but not to exceed a total of $75,000.00 for Plaintiff or any individual Class Member;

c)  An order awarding attorneys' fees and costs of suit;

d)  Pre-judgment and post-judgment interest; and

e)  Such other and further relief as the Court deems just and proper.

## COUNT II
### (ILLINOIS CREDIT CARD AND DEBIT CARD ACT)

46.  Plaintiff incorporates by reference the allegations in all preceding

paragraphs as if fully set forth herein.

47.  Section 17.03 of the Illinois Credit Card and Debit Card Act (the "Credit

Card Act"), 720 ILCS 250/1, *et seq.*, provides in pertinent part as follows:

(a) No person shall process, deposit, negotiate, or obtain payment of a credit card charge through a retail seller's account with a financial institution or through a retail seller's agreement with a financial institution, card issuer, or organization of financial institutions or card issuers if that retail seller did not furnish or agree to furnish the money, goods, service, or anything of value that is the subject of the credit card charge.

(b) No retail seller shall permit any person to process, deposit, negotiate, or obtain payment of a credit card charge through the retail seller's account with a financial institution or the retail seller's agreement with a financial institution, card issuer, or organization of financial institutions or card issuers if that retail seller did not furnish or agree to furnish the money, goods, services, or anything of value that is the subject of the credit card charge.

- 12 -

720 ILCS 250/17.03.

48.     Vertrue and the Subsidiaries are "retail sellers" and "persons" within the meaning of the Credit Card Act.

49.     Vertrue's conduct as described above is in violation of the Credit Card Act in that, because Vertrue did not obtain authorization to charge the credit cards of Plaintiff and the proposed Class and did not inform them of the putative benefits to which their ostensible 'purchase' purportedly entitled them, Vertrue did not furnish or agree to furnish the services that are the subject of the credit card charges, or anything else of value.

50.     Section 17.03(d) of the Credit Card Act provides that any person injured by a violation if this Section may bring an action for the recovery of damages, equitable relief, and reasonable attorney's fees and costs. 720 ILCS 250/17.03(d).

51.     Plaintiff and the proposed Class have been injured by Vertrue's violation of Section 17.03 of the Credit Card Act.

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, requests the following relief on Count II as follows:

a)     An order certifying the proposed Class pursuant to 735 ILCS 5/2-801, *et seq.*, and appointing Plaintiff and his counsel of record to represent the proposed Class;

b)     Judgment in favor of Plaintiff and the proposed Class and against Vertrue in the amount of the actual damages of Plaintiff and the proposed Class, including consequential damages such as late fees and assessed interest, but

- 13 -

not to exceed a total of $75,000.00 for Plaintiff or any individual Class
Member;

c)     An order awarding attorneys' fees and costs of suit;

d)     Pre-judgment and post-judgment interest; and

e)     Such other and further relief as the Court deems just and proper.

### COUNT III
### (UNJUST ENRICHMENT)

52.     Plaintiff incorporates by reference the allegations in all preceding
paragraphs as if fully set forth herein.

53.     Vertrue has received, and continues to receive, benefits conferred at the
expense of Plaintiff and the proposed Class, and it would be inequitable for Vertrue to
retain these benefits.

54.     Through the unfair and deceptive conduct described in further detail
above, Vertrue has unlawfully obtained money from Plaintiff and the proposed Class for
unordered and unwanted membership programs.

55.     Vertrue unlawfully has imposed, and continues to impose, charges against
the bank and credit card accounts of Plaintiff and the proposed Class.

56.     Vertrue has knowledge that it reaped financial benefits to the detriment of
Plaintiff and the Class by knowingly charging their bank and credit card accounts.

57.     As a direct and proximate result of Vertrue's unlawful acts and practices,
Plaintiff and the proposed Class have paid money to Vertrue that they do not owe, and
they are therefore entitled to restoration of the money they paid to Vertrue, along with

interest thereon from the date the money was converted by Vertrue to the date of judgment.

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, requests the following relief on Count III as follows:

a) An order certifying the proposed Class pursuant to 735 ILCS 5/2-801, *et seq.*, and appointing Plaintiff and his counsel of record to represent the proposed Class;

b) Judgment in favor of Plaintiff and the proposed Class and against Vertrue in the amount of the actual damages of Plaintiff and the proposed Class, including consequential damages such as late fees and assessed interest, but not to exceed a total of $75,000.00 for Plaintiff or any individual Class Member;

c) An order awarding attorneys' fees and costs of suit;

d) Pre-judgment and post-judgment interest; and

e) Such other and further relief as the Court deems just and proper.

## COUNT IV
### (CONVERSION)

58. Plaintiff incorporates by reference the allegations in all preceding paragraphs as if fully set forth herein.

59. Vertrue has charged and collected money from Plaintiff and the proposed Class for purported membership programs without their authorization. Vertrue has thus tortiously converted to its own use and wrongfully asserted control over personal property rightfully belonging to Plaintiff and the proposed Class.

- 15 -

60.    Plaintiff and the proposed Class have an unconditional and absolute right
to immediate possession of the property wrongfully converted.

61.    The specific sum of each proposed Class Member's money converted by
Vertrue is readily identifiable from information and records that should be in Vertrue's
possession and control.

62.    As a direct and proximate result of Vertrue's unlawful acts and conduct,
Plaintiff and the proposed Class were deprived of the use of their money that was
unlawfully converted by Vertrue, and they therefore are entitled to restoration of their
money, along with interest thereon from the date the money was converted by Vertrue to
the date of judgment.

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated,
requests the following relief on Count IV as follows:

a)    An order certifying the proposed Class pursuant to 735 ILCS 5/2-801, *et
      seq.*, and appointing Plaintiff and his counsel of record to represent the
      proposed Class;

b)    Judgment in favor of Plaintiff and the proposed Class and against Vertrue
      in the amount of the actual damages of Plaintiff and the proposed Class,
      including consequential damages such as late fees and assessed interest,
      but not to exceed a total of $75,000.00 for Plaintiff or any individual Class
      Member;

c)    An order awarding attorneys' fees and costs of suit;

d)    Pre-judgment and post-judgment interest; and

e)    Such other and further relief as the Court deems just and proper.

- 16 -

Dated:  September 24, 2007

Respectfully submitted,

QUINTEN E. SPIVEY,

Class Plaintiff,

By:

One of His Attorneys

Bradley M. Lakin #6243318
Robert W. Schmieder II #6239631
Mark L. Brown #6244381
**THE LAKIN LAW FIRM, P.C.**
300 Evans Avenue, P.O. Box 229
Wood River, Illinois 62095-0229
Phone: (618) 254-1127

**Attorneys for Plaintiff
and the Proposed Class**

- 17 -



**BETTER BUSINESS BUREAU, INC.**
*Serving Nebraska, South Dakota & Southwest Iowa*

## Company Reliability Report

## BBB® Serving Nebraska, South Dakota and Southwest Iowa

11811 P St (Headquarters)
Omaha, NE 68137
800-649-6814
www.bbbnebraska.org, www.bbbsouthdakota.org, www.bbbswiowa.org

### Vertrue, Inc.

9500 W Dodge Rd
Omaha, NE 68114
Telephone: (402) 661-2000
www.galleria123.com
www.dealpass.com
www.adaptivemarketing.com
www.vertrue.com
www.todaysescapes.com

*The BBB reports on members and non-members. If a company is a member of the BBB, it is stated in this **report**.*

**Original Business Start Date:** July 1989

**Principal:** Ms. Deborah Podrazo, Vice President, Corporate Services

**Customer Contact:** Ms. Connie Zimmerman, Sr. Manager, Client Sales Support

**TOB Classification:** Advertising-Direct Mail, Credit Cards-Protection Service, Purchasing Service

**BBB Membership:** This company is not a member.

## Additional DBA Names

American Express Health Services
At Home Rewards Club
Memberworks, Inc
DealPass
Privacy Matters



**PLAINTIFF'S EXHIBIT**

*tabbies*

_1_

## Nature Of Business

Vertrue is a holding company with a number of subsidiaries that design and sell

membership programs under a variety of names that offer consumers discounts in the areas of healthcare, travel, family entertainment and fashion.

The Company's subsidiaries market membership programs via direct mail, telephone and the Internet and by contracting with unaffiliated third party marketers who offer the company's membership programs to their customers. Generally the programs are offered on a thirty-day trial period, and often with the offering of a gift certificate redeemable at a major retail store as an incentive to agree to the terms of a trial membership for the program. Under the terms of the trial offer, no charge is billed to the customer's credit or debit card if, within the trial period, the customer contacts the company and cancels the membership. If the customer has not cancelled the membership by the end of the trial period, the membership fee is automatically charged to the customer's credit or debit card. Memberships are automatically renewed and charged to the customer's credit or debit card or bank account at the then current price until the customer cancels the program.

# Customer Experience

Based on BBB files, this company has an **unsatisfactory record** with the Bureau due to a **pattern** of complaints concerning unauthorized charges to consumer's credit cards.

Complaints reported to the Bureau primarily involve claims of unauthorized charges by the Company's affiliates. In such cases, customers reported no recollection of having agreed to the programs that were billed to their credit card, debit card or bank account. In some of the cases, consumers reported being charged for two or three years.

The company has responded to all complaints offering a full unconditional refund for such unauthorized charges, while also denying that any of its charges were not authorized by the customers. The company has stated that, with the consent of its customers, its practice is to tape record telephone transactions, including the terms of the agreement with the customer. The company asserts that the audio tapes clearly reveal that all customers are fully aware that their credit card, or other forms of payment, will be charged for the program if it is not cancelled within the trial period.

In response to customers who have complained about repeated charges over a period of years, the Company has stated that the terms the customers have agreed to include the automatic renewal of the membership each year at the then current price."

When considering complaint information, please take into account the company's size and volume of transactions, and understand that the nature of complaints and a firm's responses to them are often more important than the number of complaints.

The BBB processed a total of 2089 complaints about this company in the last 36 months, our standard reporting period. Of the total of 2089 complaints closed in 36 months, 662 were closed in the last year.

## Advertising Issues

### Resolved

- 11 - Company resolved the complaint issues. The consumer acknowledged acceptance to the BBB.
- 30 - Company addressed the complaint issues. The consumer failed to acknowledge acceptance to the BBB.
- 1 - Company offered a partial (less than 100%) settlement which the consumer failed to acknowledge acceptance to the BBB.

### Administratively Closed

- 1 - BBB determined the company made a reasonable offer to resolve the issues, but the consumer did not accept the offer.

## Contract Issues

### Resolved

17 - Company **resolved** the complaint issues. The consumer acknowledged acceptance to the BBB.

23 - Company addressed the complaint issues. The consumer failed to acknowledge acceptance to the BBB.

1 - Company offered a partial (less than 100%) settlement which the consumer failed to acknowledge acceptance to the BBB.

### Unresolved

1 - Company failed to resolve the complaint issues through the BBB voluntary and self-regulatory process.

### Administratively Closed

2 - BBB determined the company made a reasonable offer to resolve the issues, but the consumer did not accept the offer.

## Billing or Collection Issues

### Resolved

411 - Company **resolved** the complaint issues. The consumer acknowledged acceptance to the BBB.

9 - Company offered a partial (less than 100%) settlement which the consumer accepted.

628 - Company addressed the complaint issues. The consumer failed to acknowledge acceptance to the BBB.

15 - Company offered a partial (less than 100%) settlement which the consumer failed to acknowledge acceptance to the BBB.

### Unresolved

2 - Company failed to resolve the complaint issues through the BBB voluntary and self-regulatory process.

### Administratively Closed

24 - BBB determined the company made a reasonable offer to resolve the issues, but the consumer did not accept the offer.

9 - BBB determined that despite the company's reasonable effort to address complaint issues, the consumer remained dissatisfied.

15 - BBB determined the company provided proper verification that indicated there was no obligation to resolve the issues of the complaint.

## Sales Practice Issues

### Resolved

111 - Company **resolved** the complaint issues. The consumer acknowledged acceptance to the BBB.

400 - Company addressed the complaint issues. The consumer failed to acknowledge acceptance to the BBB.

4 - Company offered a partial (less than 100%) settlement which the consumer failed to acknowledge acceptance to the BBB.

### Unresolved

5 - Company failed to resolve the complaint issues through the BBB voluntary and self-regulatory process.

### Administratively Closed

23 - BBB determined the company made a reasonable offer to resolve the issues, but the consumer did not accept the offer.

5 - BBB determined the company provided proper verification that indicated there was no obligation to resolve the issues of the complaint.

2 - BBB determined that despite the company's reasonable effort to address
complaint issues, the consumer remained dissatisfied.

Resolved

4 - Company addressed the complaint issues. The consumer failed to
acknowledge acceptance to the BBB.

## Delivery Issues

### Resolved

4 - Company resolved the complaint issues. The consumer acknowledged
acceptance to the BBB.

15 - Company addressed the complaint issues. The consumer failed to
acknowledge acceptance to the BBB.

### Administratively Closed

2 - BBB determined the company made a reasonable offer to resolve the
issues, but the consumer did not accept the offer.

1 - BBB determined the company provided proper verification that indicated
there was no obligation to resolve the issues of the complaint.

### Unpursuable

1 - Company cannot be located.

## Repair Issues

### Resolved

1 - Company addressed the complaint issues. The consumer failed to
acknowledge acceptance to the BBB.

## Service Issues

### Resolved

15 - Company resolved the complaint issues. The consumer acknowledged
acceptance to the BBB.

26 - Company addressed the complaint issues. The consumer failed to
acknowledge acceptance to the BBB.

### Administratively Closed

1 - BBB determined the company made a reasonable offer to resolve the
issues, but the consumer did not accept the offer.

## Customer Service Issues

### Resolved

5 - Company resolved the complaint issues. The consumer acknowledged
acceptance to the BBB.

1 - Company offered a partial (less than 100%) settlement which the
consumer accepted.

22 - Company addressed the complaint issues. The consumer failed to
acknowledge acceptance to the BBB.

2 - Company offered a partial (less than 100%) settlement which the
consumer failed to acknowledge acceptance to the BBB.

### Administratively Closed

2 - BBB determined the company provided proper verification that indicated
there was no obligation to resolve the issues of the complaint.

## Guarantee or Warranty Issues

### Resolved

1 - Company resolved the complaint issues. The consumer acknowledged
acceptance to the BBB.

1 - Company addressed the complaint issues. The consumer failed to
acknowledge acceptance to the BBB.

## Product Issues

### Resolved

2 - Company resolved the complaint issues. The consumer acknowledged
acceptance to the BBB.

4 - Company addressed the complaint issues. The consumer failed to
acknowledge acceptance to the BBB.

### Administratively Closed

1 - BBB determined the company made a reasonable offer to resolve the
issues, but the consumer did not accept the offer.

## Refund or Exchange Issues

### Resolved

38 - Company resolved the complaint issues. The consumer acknowledged
acceptance to the BBB.

2 - Company offered a partial (less than 100%) settlement which the
consumer accepted.

135 - Company addressed the complaint issues. The consumer failed to
acknowledge acceptance to the BBB.

### Unresolved

1 - Company failed to resolve the complaint issues through the BBB voluntary
and self-regulatory process.

### Administratively Closed

4 - BBB determined the company made a reasonable offer to resolve the
issues, but the consumer did not accept the offer.

3 - BBB determined the company provided proper verification that indicated
there was no obligation to resolve the issues of the complaint.

2 - BBB determined that despite the company's reasonable effort to address
complaint issues, the consumer remained dissatisfied.

## Issue Not Defined

### Resolved

11 - Company resolved the complaint issues. The consumer acknowledged
acceptance to the BBB.

1 - Company offered a partial (less than 100%) settlement which the
consumer accepted.

25 - Company addressed the complaint issues. The consumer failed to
acknowledge acceptance to the BBB.

1 - Company offered a partial (less than 100%) settlement which the
consumer failed to acknowledge acceptance to the BBB.

### Unresolved

2 - Company failed to resolve the complaint issues through the BBB voluntary
and self-regulatory process.

### Administratively Closed

2 - BBB determined the company made a reasonable offer to resolve the
issues, but the consumer did not accept the offer.

1 - BBB determined that despite the company's reasonable effort to address
complaint issues, the consumer remained dissatisfied.

# Additional DBA's, Addresses, and Telephone Numbers

**Additional DBA Names**
Sears PremierHealth
Sears CDHP
Sears CWD
Premier Health Plus
Premier Health
Healthtrends
HealthMax Advantage
First USA CWD
Countrywide Dental
WWF X-perience
ValueMax
Travel Club AMEX
SmartSource
Simple Escapes
Privacy Plus
Sears Healthtrends
Market Plaza
Leisure Advantage
HomeWorks
HOME WORKS PLUS
Home & Garden Rewards
GM Travel
Essentials
Essentials Gold
Countrywide Dental & Health
Connections
Cardmember Protection Service
BusinessMax
24 Protect
24 Protect Plus
First Fun
Todays Escapes
At Home Professions
Adaptive Marketing
Dealpass.com
Passport Of Fun
Vertrue Incorporated

**Additional Addresses**
PO BOX 241631
Omaha, NE  68124

PO BOX 241946
Omaha, NE  68132

PO BOX 241716
Omaha, NE  68124

PO Box 241186
Omaha, NE  68124

PO BOX 241354
Omaha, NE  68124-5295

PO Box 24250
Omaha, NE  68124

PO Box 241644
Omaha, NE  68124-5644

PO Box 24843
Omaha, NE  68124-0843

PO Box 241295
Omaha, NE  68124-5295

PO BOX 241208
Omaha,

PO Box 241040
Omaha, NE  68124-5040

PO Box 24868
Omaha, NE  68124-0868

PO Box 241721
Omaha, NE  68124-5721

PO BOX 241935
Omaha, NE  68124-5935

PO BOX 241696
Omaha, NE  68124-5649

PO BOX 24847
Omaha, NE  68124-0847

PO Box 241120
Omaha, NE  68124-5120

PO Box 241965
Omaha, NE  68124

PO Box 241632
Omaha, NE  68124-5632

PO BOX 241719
Omaha, NE  68124

PO BOX 24315
Omaha, NE  68124-5315

PO BOX 242228

PO BOX 248768
Omaha, NE  68124-5040

PO Box 241722
Omaha, NE  68124-5722

PO BOX 241190
Omaha, NE  68124-5190

PO Box 24866
Omaha, NE  68124-0866

PO Box 5152
Des Plaines, IL  60017

**Additional Phone Numbers**

Tel: (800) 562-8865
Tel: (800) 777-8075
Tel: (800) 568-2386
Tel: (800) 475-1999
Tel: (800) 522-0967
Tel: (800) 365-6169
Tel: (877) 234-1336
Tel: (800) 750-4364
Tel: (800) 791-0984
Tel: (877) 271-4883
Tel: (888) 405-5356
Tel: (800) 544-3738
Tel: (877) 442-5757
Tel: (800) 790-4814
Tel: (800) 245-8443
Tel: (888) 242-0180
Tel: (877) 863-6237
Tel: (800) 436-0187
Tel: (877) 879-5258
Tel: (877) 500-5774
Tel: (877) 820-6329
Tel: (402) 661-2422
Tel: (888) 999-0557
Tel: (888) 394-6932
Tel: (800) 211-9741
Tel: (888) 425-5874
Tel: (877) 234-0787
Tel: (800) 550-4720

# Industry Tips

Discount Buying Clubs: What You Order is Not Always What You Get

Report as of September 12, 2007
Copyright© 2007 BBB®, Inc.

*If you choose to do business with this company, please let the company know that you
contacted the BBB for a report.*

*BBB reports may not be reproduced for sales or promotional purposes.*

*The information in this report has either been provided by the company or has been
compiled by the BBB from other reliable sources.*

*As a matter of policy, the BBB does not endorse any product, service or company. BBB
reports generally cover a three-year reporting period, and are provided solely to assist
you in exercising your own best judgment. Information contained in this report is
believed reliable but not guaranteed as to accuracy. Reports are subject to change at
any time.*