IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN OF ILLINOIS

| | |
|---|---|
| QUINTEN E. SPIVEY, individually and on behalf of others similarly situated, ) ) ) Plaintiff, ) ) vs. ) ) VERTRUE, INC., ) ) Defendant. ) | Case No. 07-CV-0779-MJR |

**MEMORANDUM AND ORDER**

**REAGAN, District Judge:**

Before the Court is Plaintiff's Motion to Remand (Doc. 11). The matter is fully briefed and ready for disposition.

**I.    Factual Background/Procedural History**

On November 2, 2007, Defendant Vertrue, Inc., ("Vertrue") removed this action from the Circuit Court, Twentieth Judicial Circuit, Monroe County, Illinois. This putative nationwide class action is based on Vertrue's alleged unlawful and deceptive membership billing practices.

Plaintiff alleges that Vertrue, which describes itself as an "integrated marketing services company," markets and sells at least 22 membership programs which purport to provide savings on various consumer goods and services. Complaint, ¶¶ 10, 11, 15. For these memberships, Vertrue charges monthly fees ranging from approximately $9.95 to $19.95 or annual fees ranging from approximately $169.95 to $199.95. *Id.* at ¶ 11. Plaintiff alleges that there is little or no demand for Vertrue's membership discounts, and Vertrue's success as a business enterprise

1

depends on its ability to "cram" consumers with membership charges. *Id*. at ¶ 12. This cramming consisted of imposing its membership fees directly against consumers' credit cards, debit cards and bank accounts without consumers' knowledge or authorization. *Id*. at ¶ 13. Vertrue also made it virtually impossible for consumers to cancel their memberships and, thus, to discontinue repeated unauthorized charges to their accounts. *Id*. at ¶ 14.

Plaintiff asserts claims under the Illinois Consumer Fraud Act, 815 ILCS 505/1, *et seq.,* the Illinois Credit Card and Debit Card Act, 720 ILCS 250/1, *et seq.* and for unjust enrichment and conversion. The Plaintiff class is identified as

> All Illinois residents whose credit cards, debit cards, or bank accounts were billed for one of more of Vertrue's memberships during the period from September 25, 2002 to the present without either written authorization or recorded verbal authorization.

Plaintiff seeks remand of this action to state court, contending that Vertrue's removal relied exclusively on 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005 ("CAFA"), but Vertrue failed to present competent evidence that the amount in controversy equals or exceeds the $5 million necessary to invoke the CAFA. As a result, this Court lacks subject matter jurisdiction and should remand this action to state court.

**II.    Legal standards**

**A.    Removal**

Removal of actions from state court to federal court is governed by 28 U.S.C. § 1441, which provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." **28 U.S.C. § 1441(a)**. The defendant has the burden of establishing that an action is

removable, and doubts concerning removal must be resolved in favor of remand to the state court. *See Brill v. Countrywide Home Loans, Inc.*, **427 F.3d 446, 448 (7th Cir. 2005)**.

### B. Diversity Jurisdiction under the CAFA

Under the CAFA, federal courts have jurisdiction in diversity, with exceptions not at issue here, *see* **28 U.S.C. § 1332(d)(3), (d)(4), (d)(5), (d)(9)**, over class actions with one hundred or more class members, *see* **28 U.S.C. § 1332(d)(5)(B)**, in which any member of the plaintiff class is a citizen of a state different from that of any defendant, or any member of a plaintiff class or any defendant is a foreign state or a citizen or subject of a foreign state. *See* **28 U.S.C. § 1332(d)(2)**. In a class action in which the CAFA's requirement of minimal diversity is met, a federal court has jurisdiction if, after aggregating class members' claims, more than $5 million, exclusive of interest and costs, is in controversy. *See* **28 U.S.C. § 1332(d)(2), (d)(6)**. Class actions filed in state court that satisfy the jurisdictional prerequisites of the CAFA are subject to removal to federal court. *See* **28 U.S.C. § 1453(a), (b)**.

### III. Discussion

Plaintiff contends that Vertrue has made no effort to demonstrate the amount in controversy or class size, other than to assert that Vertrue had 93,087 Illinois customers who generated $6,793,568 in revenue during the class period. According to Plaintiff, the proposed class consists of only those Illinois residents who were charged by Vertrue without documented authorization, not the entirety of Vertrue's customers in the State of Illinois regardless of authorization. Plaintiff states that Vertrue cannot satisfy its burden of demonstrating the amount in controversy by a preponderance of the evidence simply by asking the Court to arbitrarily pick a number between 1 and 93,087.

3

Moreover, according to Plaintiff, Vertrue provides no basis for quantifying the average unauthorized charge per class member in order to assess the amount in controversy. Vertrue simply attests that the total revenue generated during the proposed class period was $6,793,568, but other than the two unauthorized $199.95 charges to Mr. Spivey, there is no information as to what portion of this figure that was charged without authorization.

Lastly, Plaintiff contends that any evidence regarding the amount in controversy is exclusively within Vertrue's control and should have been disclosed.

Vertrue responds that it has met its burden to establish the amount in controversy by coming forward with evidence of the number of class members and their damages. Vertrue asserts that meeting its burden does not include a requirement to admit merits issues such as which consumers were allegedly charged without authorization. Vertrue maintains that it has identified the number of potential class members, *i. e.,* from September 25, 2002, to the present, 93,087 Illinois residents subscribed to four of the twenty-two membership programs for which the complaint seeks to recoup membership fees. Vertrue states that it has estimated the potential damages of the class as follows: taking four of the twenty-two membership programs for which the complaint seeks to recoup membership fees, the net membership fees in controversy during the relevant time is $6,793,568.00.

Lastly, Vertrue asserts that it has estimated the amount in controversy and, thus, has shifted the burden to Plaintiff to show that it is legally certain that the amount in controversy is less than $5 million.

Plaintiff replies that Vertrue has self-servingly redefined the class by describing *all* of Vertrue's Illinois purchasers as potential class members without regard to whether they meet the

4

objective criteria in Plaintiff's proposed class definition.  Specifically, Plaintiff cites Vertrue's reported practice of maintaining evidence of the authorizations received from customers in their position, as follows:

> [W]here a consumer receives a telephone solicitation offering a membership program, Adaptive Marketing LLC will verify the consumer's acceptance of the offer by creating, with the consumer's permission, a recording of that portion of the call wherein the consumer provides his or her unambiguous express affirmative consent to the payment, cancellation and refund terms....  Doc. 21, p. 2 (quoting www.adaptive marketing.com/about_bp.asp.).

Plaintiff contends that, based on this information, Vertrue could subtract the total number of recorded or written authorizations from the total number of customers to identify the actual number of class members.  Customers who do not fall within the class definition proposed by Plaintiff are not entitled to relief and should not be included in the amount-in-controversy analysis.  Citing ***Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005)**, Plaintiff argues that the defendant's admission therein that one of its employees had, without authorization, sent at least 3,800 fax ads might have ultimately led to a conclusion of liability, but that did not relieve the defendant of the burden to reasonably estimate the actual amount in controversy.

The Seventh Circuit Court of Appeals's analysis in ***Brill*** guides this Court's decision in the current action.  Therein, the Seventh Circuit observed that the defendant had conceded that it sent at least 3,800 advertising faxes, and the governing statute provided that the court could award $500 per fax, a sum that may be trebled if "the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection."  ***Brill*, 427 F.3d at 447**.  Thus, the amount in controversy could reach $5.7 million.  ***Id***.

Applying the ***Brill*** analysis, the Court finds that the burden of establishing jurisdiction remains with Vertrue.  Otherwise, Vertrue could remove this action without making any

5

effort to calculate its maximum exposure and without conceding that any unauthorized charges were made. *See id.* The burden would be upon Plaintiff to show that Vertrue could not possibly have made enough unauthorized charges to put the stakes over $5 million. *See id*. This early in the litigation, Plaintiff would have no way to show that. *See id.* This vital knowledge is uniquely in the hands of Vertrue, and, consequently, Vertrue carries the burden of coming forward with the information so that the choice between state and federal court may be made accurately. *See id* **at 447-48**.

Granted, "[t]he question is not what damages the plaintiff will recover, but what amount is 'in controversy' between the parties. That the plaintiff may fail in its proof, and the judgment be less than the threshold ... does not prevent removal." ***Brill,* 427 F.3d at 446.** Nevertheless, this does not mean that a removing defendant is relieved of its burden to establish the amount in controversy. As the Court in ***Brill*** pointed out, "[a] removing defendant can't make the plaintiff's claim for him; as master of the case, the plaintiff may limit his claims (either substantive or financial) to keep the amount in controversy below the threshold. Part of the removing party's burden is to show not only what the stakes of the litigation *could be,* but also what they *are* given the plaintiff's actual demands." *Id.* **at 449 (emphasis in original)**.

In such a situation, as the Seventh Circuit stated in ***Meridian Sec. Ins. Co. v. Sadowski,* 441 F.3d 536, 541 (7th Cir. 2006)***, and reiterated in *Brill* and *Rising-Moore v. Red Roof Inns, Inc*., 435 F.3d 813 (7th Cir. 2006)**, "the *removing defendant*, as proponent of federal jurisdiction, must establish what the plaintiff stands to recover." ***Meridian,* 441 F.3d at 541 (emphasis added).** The Court in ***Meridian*** stated, "We have suggested several ways in which [a proponent of federal jurisdiction may establish what the plaintiff stands to recover] - by contentions,

6

interrogatories or admissions in state court; by calculation from the complaint's allegations; by reference to the plaintiff's informal estimates or settlement demands; or by introducing evidence, in the form of affidavits from the defendant's employees or experts ...." *Meridian,* **441 F.3d at 541-42.**

Given these options, Vertrue has provided only one piece of evidence regarding the amount in controversy, an affidavit from Sean Rattigan, Vertrue's "Director Business Analysis," (Doc. 2, Exhibit D). In that affidavit, Rattigan asserts that, during the relevant period, approximately 93,087 Illinois residents for one or more of the Vertrue products at issue were charged $6,793.568. The problem that the Court perceives with this statement is that it effectively redefines the potential plaintiff class. Rattigan's statement does not distinguish those Illinois customers who were charged without written or recorded authorization from all Illinois residents who had membership in four Vertrue products.

The Court cannot determine if Vertrue proposes this as a sample (four membership programs out of a total of twenty-two) from which the Court is to speculate that the ultimate number of potential class members must be must larger or if Vertrue intends the Court to assume that this is the ultimate number of potential class members. In either case, the Court's jurisdiction cannot rest on speculation or assumption.

It would not have been difficult for Vertrue to have produced some evidence, providing a reasonable estimate of the number of memberships which are potentially involved in this matter. It certainly would have required no greater effort, or greater admission of liability, than that in *Brill* where the defendant admitted that one employee sent a number of faxes that was sufficient to meet the jurisdictional requirement.

Vertrue also provides no competent evidence for its estimate of the revenue generated by unauthorized charges. Rather, Vertrue offers that the approximately 93,087 Illinois residents for four listed programs were charged approximately $6,793,568. Other than the two unauthorized $199.95 charges to Spivey, there is no indication as to what portion of this figure involved unauthorized charges - unless *all* charges to *all* Illinois residents who were members of the programs at issue were unauthorized.

In this matter, Vertrue has not come forward with any of the "vital knowledge" - which it undoubtedly possesses - to support its assertions regarding its potential liability. Consequently, the "choice between state and federal court" cannot be made accurately by this Court. Vertrue has not met its burden to establish what "the stakes of this litigation *are* given [Plaintiff's] actual demands," *see Brill,* **427 F.3d at 449 (emphasis in original)**, and has failed to establish that the amount in controversy in this matter exceeds the CAFA jurisdictional threshold of $5 million.

This being the case, this Court does not enjoy subject matter jurisdiction under the CAFA. As the CAFA is Vertrue's sole basis for the removal of this action, the Court must remand this matter for lack of subject matter jurisdiction.

*Attorney's Fees*

Plaintiff moves for an order for his costs, including attorney's fees pursuant to **28 U.S.C. § 1447(c)**. The United States Supreme Court, in *Martin v. Franklin Capital Corp.,* **546 U.S. 132 (2005),** recently has addressed this issue:

> The appropriate test for awarding fees under **§ 1447(c)** should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied. In light of these "large objectives," the standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts

may award attorney's fees under **§ 1447(c)** *only where the removing party lacked an objectively reasonable basis for seeking removal.* Conversely, when an objectively reasonable basis exists, fees should be denied.

*Martin,* **546 U.S. at 140-41 (citations omitted) (emphasis added).**

In the instant case, the Court **FINDS** that Vertrue's removal did not lack an objectively reasonable basis. Accordingly, Plaintiff's request for fees is **DENIED.**

### IV. Conclusion

Accordingly, since this Court lacks subject matter jurisdiction, the Court **GRANTS** Plaintiff's Motion to Remand (Doc. 11) and **REMANDS** this case to the Circuit Court of Monroe County, Illinois. The Court declines to award costs of removal under **28 U.S.C. § 1447(c)**, in the wake of the United States Supreme Court's holding in ***Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005)**.

**IT IS SO ORDERED.**

**DATED this 8th day of April, 2008**

          **s/Michael J. Reagan**
          **MICHAEL J. REAGAN**
          **United States District Judge**