IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| QUINTEN E. SPIVEY, individually and on behalf of others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 07-cv-0779-MJR ) |
| ADAPTIVE MARKETING, LLC, | ) ) |
| Defendant and Third-Party Plaintiff, | ) ) |
| vs. | ) ) |
| WEST DIRECT, LLC, | ) ) |
| Third-Party Defendant. | ) |

## MEMORANDUM and ORDER

**REAGAN, District Judge:**

### I. Introduction and Background

Plaintiff Quinten Spivey, individually and on behalf of others similarly situated, alleges that Adaptive Marketing, LLC, ("Adaptive") charged him excessive and unauthorized amounts for membership in a retail discount program. Spivey submits that Adaptive made unauthorized charges to his credit card based on a January 2003 telephone conversation which he does not recall. He contends that he neither authorized a membership in the Homeworks Plus program nor received a "welcome kit" from Adaptive nor read and signed the Membership Agreement that Adaptive contends governs the relationship between him and Adaptive. Spivey contends that when he attempted to recover the payments he had made, an Adaptive representative agreed to a *pro rata* refund of one charge and refused to refund any other portion of the charges to his credit card.

-1-

On November 21, 2008, Adaptive filed a third-party complaint against West Direct, LLC (Doc. 76). Adaptive contends that, under the Wholesale and Retail Marketing Agreement (the "West Agreement") between West and Adaptive's predecessor in interest, as amended, West is solely responsible for the marketing and sale of the membership program that Plaintiff has challenged in his First Amended Class Action Complaint against Adaptive. As such, according to Adaptive, should Spivey prevail in this action, West is liable for part or all of any recovery.

Spivey is a citizen of the State of Illinois; Adaptive is a citizen of Delaware and Connecticut; and West is a citizen of Delaware and Nebraska. The contract under which Adaptive has sued West for indemnification is a Nebraska contract. The Court determined that it has diversity jurisdiction over this class action under the federal diversity statute. **28 U.S.C. § 1332(d)**.

By motion to dismiss filed December 23, 2008, West challenges this Court's personal jurisdiction (Doc. 90). The motion is fully briefed and comes now before the Court for resolution.

## II. Analysis

Due process limits when a state may exercise personal jurisdiction over nonresident defendants. *Asahi Metal Indus. Co. v. Superior Court of California*, **480 U.S. 102, 108 (1987);** *World-Wide Volkswagen Corp. v. Woodson*, **444 U.S. 286, 291 (1980).** This limitation permits potential defendants to structure their contacts and plan where their business activities will and will not render them liable to suit. *See Burger King Corp. v. Rudzewicz,* **471 U.S. 462, 472-73 (1985);** *World-Wide Volkswagen*, **444 U.S. at 297.**

In diversity cases, personal jurisdiction may not be exercised over nonresident defendants unless "minimum contacts" have been established between the defendants and the particular state in which the court sits (the forum state). *Jennings v. AC Hydraulic A/S*, **383 F.3d**

**546, 551 (7th Cir. 2004).** In *Burger King*, **471 U.S. at 474,** the Supreme Court emphasized that, notwithstanding modern modes of transportation and communication, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State."

Stated another way, a federal court's assertion of personal jurisdiction must comport with "traditional notions of fair play and substantial justice," to satisfy the Due Process Clause of the United States Constitution. *International Shoe Co. v. Washington*, **326 U.S. 310, 316 (1945).** Defendants must have "purposely availed" themselves of the privilege of conducting activities within the forum state, such that they should reasonably anticipate being haled into court there. *World-Wide Volkswagen*, **444 U.S. at 297.** Defendants may not be forced to defend a suit solely "as a result of random, fortuitous, or attenuated contacts" with that state. *Burger King*, **471 U.S. at 476.**

In addition to examining whether the exercise of personal jurisdiction squares with *federal* due process requirements, courts must also ascertain whether the exercise of personal jurisdiction offends *state* statutory or constitutional limits. The Seventh Circuit has stated: "Three distinct obstacles to personal jurisdiction must generally be examined: 1) state statutory law; 2) state constitutional law; and 3) federal constitutional law." *RAR, Inc. v. Turner Diesel, Ltd.,* **107 F.3d 1272, 1276 (7th Cir. 1997).** *Accord Jennings*, **383 F.3d at 548 ("In diversity cases, such as this one, a federal court must determine if a court of the state in which it sits would have personal jurisdiction over the defendant.... Thus, the jurisdictional inquiry begins with an application of the statutory law of the forum state....").**

Illinois's long-arm statute provides that an Illinois court "may ... exercise jurisdiction on any ... basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." **735 ILCS § 5/2-209(c).** Because the Illinois statute authorizes personal jurisdiction

to the constitutional limits, the three inquiries mentioned above collapse into two constitutional inquiries – one state and one federal.

The Illinois Supreme Court has explained that personal jurisdiction may be asserted "only when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." ***RAR*, 107 F.3d at 1276, *quoting Rollins v. Ellwood*, 565 N.E.2d 1302, 1316 (Ill. 1990).** In the case at bar, Adaptive has not demonstrated that West has sufficient contacts with Illinois to support the exercise of either general or specific personal jurisdiction in this forum.

Illinois's long-arm statute lists various kinds of conduct in Illinois which allow the exercise of personal jurisdiction. Under **735 ILCS § 5/2-209(a)(1)**,

> Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:
>
> (1) The transaction of any business within this State;...

In Adaptive's third-party complaint, it alleges that, under the terms of the West Agreement, West is solely responsible for the marketing and sale of the membership program that Spivey has challenged in his First Amended Class Action Complaint against Adaptive. Adaptive asserts that the Court's exercise of personal jurisdiction over West meets the due process requirement of the federal constitution because West has sufficient minimum contacts with Illinois such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. Adaptive contends that West is subject to jurisdiction pursuant to the Illinois long-arm statute, 735

ILCS §§ 5/2-209(a) and (c), because this action arises either from West's transaction of business in this State or the making of a promise substantially connected with this State or on any other basis permitted by the Illinois Constitution and the Constitution of the United States.

"For a contract to constitute transaction of business in Illinois, either the making or the performance of the contract must occur at least in part in Illinois." ***Zurich Ins. Co. v. American Ins. Co.*, 1989 WL 134515, \*1 (N.D.Ill. 1989),** *citing **John Walker & Sons v. DeMert & Dougherty, Inc.*, 821 F.2d 399, 402 (7th Cir. 1987)**. Adaptive's claim fails in the first instance because the contract was not made in Illinois. As to the performance of the contract, Adaptive contends that West's conduct in soliciting and selling to Illinois consumers comprises both the alleged cause of action by Spivey against Adaptive and Adaptive's complaint against West.

In its essentials, Adaptive's argument is that the West Agreement is without geographical limitation. West advertised its marketing services nationally on its website (to companies, not individuals) and received telephone calls from consumers in any state where the products that generated the underlying sale (here, Atkins diet products) were advertised. Under Adaptive's scenario, West could expect to be haled into court in any state from which a phone call was placed to its marketing center. The long-arm statute does not paint with such a broad brush. West does not specifically direct its contacts to any particular forum and has not "transacted business" in Illinois in the traditional sense of that term. The West Agreement is not a "universal consent to jurisdiction," nor does it contain "a promise to perform the contract in Illinois." ***Zurich Ins. Co.*, 1989 WL 134515, at \*2.**

Adaptive fails to provide evidence of any specific contacts between West and Illinois sufficient to subject West to personal jurisdiction in this state. There is no evidence that West has

maintained property, an office, or employees in Illinois, nor is there any evidence that West conducts any operations within the state. Merely communicating with Spivey, in a call placed *by* Spivey, is an insufficient basis to show that West was doing business in the state. Indeed, under Seventh Circuit precedent, "the fact that the defendant did not initiate the transaction [is] a factor militating against personal jurisdiction[.]" ***Madison Consulting Group v. State of S.C.,* 752 F.2d 1193, 1202 (7th Cir. 1985) (citations omitted)**.

Adaptive's contention that the underlying complaint dictates the necessity of West's indemnifying it in Illinois also fails. Adaptive cannot bootstrap a third-party defendant into court based on Spivey's complaint against Adaptive. ***Zurich Ins. Co.,* 1989 WL 134515, at \*2.**

Even if the Court were to consider the underlying complaint, the Court would lack personal jurisdiction over West. Count One of Spivey's first amended class action complaint alleges that Adaptive breached the terms of its putative agreements with Spivey and the proposed Class by charging amounts that exceeded authorization. Count II alleges that Adaptive has been unjustly enriched in that it received and continues to receive benefits from Spivey and the proposed Class without their consent.

Under the West Agreement, West received calls from consumers, marketed Adaptive's membership program, verified all sales, recorded callers' acceptance of the membership program offers in accordance with Adaptive's taping/recording standards and monitored the marketing, for all of which it received a commission. Contrary to Adaptive's assertion that the script is "West's language and its sole responsibility," the West Agreement provides that West's marketing and order acceptance used only scripts that were approved by Adaptive in advance in writing and that were read verbatim to all West Retail Callers. Stated simply, Spivey's claims that Adaptive breached its alleged

contract with him by charging amounts that exceeded authorization and by receiving benefits without consent are claims that lay squarely at Adaptive's door, not West's.

Adaptive submits that sufficient minimum contacts can be shown under the "stream of commerce" theory. The cases cited by Adaptive are all *personal injury* cases, and it is indisputable - and irrelevant - that in a personal injury suit, "the harm to the person is suffered in the locus of the injury at the time of the harm." ***Czarobski v. St. Kieran's Church,* 851 F.Supp. 1219, 1222 (N.D.Ill. 1994)**. What Adaptive fails to submit is any authority for its contention that a company places a product into the stream of commerce where that company has no product, has no responsibility for actually providing a product, and takes no money from the consumer for a product. The evidence is that Adaptive created the product, delivered it to Spivey, billed him for it and collected the money from him.

West did not solicit buyers in the state of Illinois. Adaptive cites to ***World-Wide Volkswagen***, which explains: "The forum state does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state." **444 U.S. at 297-98.** Essentially, Adaptive equates a company receiving phone calls from consumers and attempting to "upsell" those consumers into also buying other products with a manufacturer selling its products in the national stream of commerce. However, the two are not equivalent. Moreover, Adaptive does not identify a single decision in any court finding that these acts necessarily result in personal jurisdiction in every state.

Given that Adaptive provides no evidence of continuous or substantial activity within the state of Illinois, this Court cannot exercise either specific or general personal jurisdiction over

West under the Illinois Constitution or United States Constitution.

### III. Conclusion

Adaptive has not met its burden of demonstrating that this Court can properly exercise personal jurisdiction over Defendant West Direct, LLC. Put simply, Adaptive has not shown the necessary minimum contacts between the State of Illinois and West.

**FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2)** authorizes federal district courts to dismiss lawsuits for lack of personal jurisdiction. Dismissal is appropriate here.

For all these reasons, the Court **GRANTS** West Direct, LLC's motion to dismiss (Doc. 90) pursuant to Federal Rule of Civil Procedure 12(b)(2) and **DISMISSES** Adaptive's complaint for lack of personal jurisdiction. Dismissal shall be *without* **prejudice**. *See, e.g., Great Lakes Overseas, Inc. v. Wah Kwong Shipping Group, Ltd.,* **990 F.2d 990, 998 (7th Cir. 1993).** As a result, the Court also **DENIES as moot** Adaptive's motion for summary judgment (Doc. 74) and West's motion to stay discovery and proceedings (Doc. 125).

**IT IS SO ORDERED.**

**DATED this 24th day of April, 2009**

                                             s/Michael J. Reagan
                                             **MICHAEL J. REAGAN**
                                             **United States District Judge**